IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| v. | : | CRIMINAL NO. 24-cr-84 |
| MATTHEW GABRIEL | : | |

### GOVERNMENT'S SENTENCING MEMORANDUM

The United States of America, by its undersigned attorneys, Jacqueline C. Romero, United States Attorney for the Eastern District of Pennsylvania, and Danielle S. Bateman, Assistant United States Attorney for the district, respectfully submits this sentencing memorandum regarding Defendant Matthew Gabriel.

### PROCEDURAL BACKGROUND

Defendant Matthew Gabriel is charged by a Superseding Information with two counts of transmitting in interstate or foreign commerce a threat to injure in violation of 18 U.S.C. § 875(c). On September 18, 2024, the Defendant appeared before this Court and pled guilty to the above counts. A sentencing hearing is scheduled for January 7, 2025.

### I. FACTUAL BACKGROUND

On August 3, 2023, the Defendant, while located in the Eastern District of Pennsylvania, submitted an anonymous "tip" through the Internet to the Norwegian Police Security, also known as Politiets Sikkerhetstjeneste, (hereinafter "PST"), stating the following:

> On August 15th a man named [E.V] is headed around oslo and has a shooting planned with multiple people on his side involved. they plan to take as many as they can at a concert and then head to a department store. I don't know any more people then that, I just can't have random people dying on my conscience. he plans to arrive there unarmed spend a couple days normal and then execute the attack. please be ready. he is around a 5 foot 7 read head

> coming from America, on the 10th or 11th I believe. he should have weapons with him. please be careful

E.V. is a United States citizen who resided in Iowa and attended the University of Iowa. PST confirmed that E.V. had obtained a temporary resident permit to study at the University of Oslo from July 12, 2023, to February 29, 2024. According to his study permit application, E.V. was to arrive in Norway on August 11, 2023. Nearly 900 Norwegian man-hours were spent reacting to and investigating the threatened mass shooting over the course of a 5-day period. The FBI also expended substantial man-hours reacting to and investigating the threat.

The defendant and E.V. were members of a fantasy football chat group called "the Cut" where they had been involved in an online disagreement. The defendant learned through the fantasy football chat group that E.V. was to study abroad in Norway in August of 2023. When interviewed by the FBI, the defendant admitted that he had submitted the "tip" to the PST and that the tip was false. The Defendant submitted the tip over the Internet knowing that it was false and that the PST would view it as a true threat.

On March 22, 2024, the Defendant, while located in the Eastern District of Pennsylvania, sent an email posing as a "John Harold" to the University of Iowa with the subject line "Possible Threat." The email contained the following:

> Hello, I saw this in a group chat I'm in and just want to make sure everyone is safe and fine. I don't want anything bad to happen to any body. Thank you. A man named [PERSON 1] from I believe Nebraska sent this, and I want to make sure that it is a joke and no one will get hurt.



Person 1 is also a member of the fantasy football group "the Cut." The Defendant took a screenshot from a conversation happening in "the Cut" and submitted it to the University of Iowa. The Defendant knew that E.V. was not going to blow up the school and that the message had been sent in jest by another member of "the Cut" regarding the Defendant's prior threat. Despite knowing that there was no actual threat to the University of Iowa, the Defendant transmitted the email knowing that the University of Iowa would view it as a true threat.

II.     **SENTENCING CALCULATION**

   A.  **Statutory Maximum Penalties**

The Court may impose the following statutory maximum and mandatory minimum sentences: Count 1, transmitting in interstate or foreign commerce a threat to injure in violation of 18 U.S.C. § 875(c): 5 years' imprisonment, 1 year supervised release, a $250,000 fine, and a $100 special assessment; Count 2, transmitting in interstate or foreign commerce a threat to injure in violation of 18 U.S.C. § 875(c): 5 years' imprisonment, 1 year supervised release, a $250,000 fine, and a $100 special assessment.

Total Maximum and Mandatory Minimum Sentence: 10 years' imprisonment, 2 years supervised release; a $250,000 fine, and a $200 special assessment. Full restitution may also be ordered.

   B.  **Sentencing Guidelines Calculation**

The Probation Office correctly calculated an advisory guidelines range of 12 to 18 months in the Presentence Investigation Report (PSR). (PSR ¶ 85.) The Probation Office reached this calculation as follows:

Counts One and Two do not group because the counts involve separate actions and distinct harms. (PSR ¶ 24). The base offense level for Count 1 and Count 2 is 12 under

Sentencing Guidelines §2A6.1(a)(1). (PSR ¶¶ 25, 31). There is a 4-level enhancement on Count 1 under §2A6.1(b)(4)(A) because the offense resulted in a substantial disruption of public, governmental, or business functions or services. (PSR ¶ 26). The results in an adjusted offense level of 16 on Count 1 and 12 on Count 2. (PSR ¶¶ 30, 36). The offense level is increased by 2 pursuant to §3D1.4, resulting in a combined adjusted offense level of 18. (PSR ¶ 40). The defendant is a Zero-Point Offender, so the offense level is reduced by 2 pursuant to §§4C1.1(a) and (b). (PSR ¶ 41). In addition, because the Defendant has accepted responsibility and timely notified the government of his intention to plead guilty, his offenses are decreased by two and one levels, respectively, pursuant to USSG § 3E1.1(a) and (b). (PSR ¶¶ 42-43). Accordingly, the Defendant's total offense level is 13. (PSR ¶ 44).

The defendant has zero criminal history points, resulting in a criminal history category of I. (PSR ¶ 47). Thus, the advisory guideline range is 12 to 18 months' imprisonment. (PSR ¶ 85.)

### III.    THE 3553(A) FACTORS

The Supreme Court has declared that "[a]s a matter of administration and to secure nationwide consistency, the Guidelines should be the starting point and the initial benchmark." *Gall v. United States*, 552 U.S. 38, 49 (2007). Thus, the Sentencing Guidelines remain an indispensable resource for assuring appropriate and uniform punishment for federal criminal offenses.

In addition, this Court must also consider all of the sentencing considerations set forth in Section 3553(a). Those factors include: (1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) the need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (3) the need to afford adequate deterrence to criminal conduct, and to protect the public

from further crimes of the defendant; (4) the need to provide the defendant with educational or vocational training, medical care, or other correctional treatment in the most effective manner; (5) the guidelines and policy statements issued by the Sentencing Commission; (6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and (7) the need to provide restitution to any victims of the offense. 18 U.S.C. § 3553(a).

This was a serious offense, which wasted significant time and resources of multiple law enforcement agencies who responded to the threats as if they were genuine threats that posed a grave risk to public safety. These threats were also dangerous because they diverted law enforcement time and limited resources away from other legitimate public safety needs. In addition, the Defendant committed the second offense after he had already signed a plea agreement with the Government for the first threat. Accordingly, specific deterrence is particularly important here.

The Defendant is a 26-year-old man with no criminal history. The Defendant reports a positive relationship with his family and has been in a long-term relationship. The defendant trained as a commercial painter and completed a union apprenticeship. The Defendant has maintained steady employment as a painter for Southeastern Pennsylvania Transportation Authority (SEPTA) since mid-December 2023. The Defendant admittedly drinks alcohol excessively, including apparently during the time of the offenses, and reports a history of depression. It appears the Defendant is genuinely remorseful and that the offenses were driven, in part, by alcohol-fueled impulsiveness, mental health issues, and a personal dispute. The Defendant would benefit from the special conditions recommended in the PSR, including mental health testing and treatment and alcohol testing and treatment.

## IV. CONCLUSION

For all of these reasons, the government respectfully recommends that the Defendant be sentenced in accordance with the plea agreement in this matter.

                                                  Respectfully submitted,

                                                  JACQUELINE C. ROMERO
                                                  United States Attorney

                                                  */s/ Danielle S. Bateman*
                                                  Danielle S. Bateman
                                                  Assistant United States Attorney

## **CERTIFICATE OF SERVICE**

I hereby certify that on this date I caused a true and correct copy of the foregoing Government's Sentencing Memorandum to be served by ECF and email upon counsel for defendant:

Lonny Fish, Esq.
*Counsel for Matthew Gabriel*


/s/ Danielle S. Bateman
Danielle S. Bateman
Assistant United States Attorney

Date:  January 5, 2025